**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MARGARET A. SCHOMER,<br><br>Plaintiff,<br><br>v.<br><br>ETHICON, INC. and JOHNSON & JOHNSON,<br><br>Defendants. | Court File No. ______________<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Margaret A. Schomer ("Plaintiff"), by and through Plaintiff's attorneys of record, Charles H. Johnson and Jonathan R. Mencel, hereby files this Complaint and Demand for Jury Trial against Defendants Ethicon, Inc. and Johnson & Johnson (hereinafter "Defendants"), and states on information and belief as follows:

## INTRODUCTION

1. Plaintiff brings this action to recover damages and/or for equitable relief, against Defendants who designed, manufactured, tested, marketed, distributed, promoted, and sold products known as the Prolift, TVT Secur, and TVT Orburator (hereinafter referred to as "the Products").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff alleges that the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship.

3. Venue in this Court is proper in that Ethicon, Inc. and Johnson & Johnson researched, designed, licensed, manufactured, tested, marketed, distributed, and/or sold the

Products in the State of Minnesota. Thus, a sufficient nexus exists between Defendants' forum contacts and Plaintiff's claims to justify this venue and the assertion of jurisdiction in Minnesota.

## PARTIES

4. Plaintiff at all times relevant is a citizen of the State of Illinois.

5. Defendant Johnson & Johnson is a New Jersey corporation, with its principal place of business in New Brunswick, New Jersey.

6. Defendant Ethicon, Inc. is a wholly owned subsidiary of Defendant Johnson & Johnson located in Somerville, New Jersey.

7. At all relevant times, Defendants designed, developed, manufactured, licensed, marketed, distributed, sold and/or placed in the stream of commerce the Products at issue in this lawsuit.

8. At all times mentioned herein, Defendants acted, by and through their agents, representatives and employees who acted within the scope and course of their agency and employment.

## FACTUAL BACKGROUND

9. The Products are an implantable, mesh, pelvic floor support device designed to treat pelvic organ prolapse ("POP") and relieve pain, discomfort, and bladder control issues that accompany POP.

10. The Products are designed to be implanted to help strengthen the weakened vaginal wall in patients with POP, and to support the urethra in patients suffering from stress urinary incontinence ("SUI").

11. The Products are comprised of non-woven polypropylene fibers. The Products are part of a line of transvaginal mesh products manufactured, marketed, packaged, labeled, and

sold by Defendants. The Defendants' entire line of transvaginal mesh products share common defects in design, warnings, and manufacture.

12. The Products are Class II medical devices and were approved for use by the FDA through the 510(k) approval process.

13. The 510(k) approval process by the FDA does not require extensive review and approval by the FDA. A 510(k) is a premarket submission made to the FDA to demonstrate that the device to be marketed is at least as safe and effective, that is, substantially equivalent, to a legally marketed device that is not subject to premarket approval. Submitters simply must compare their device to one or more legally marketed devices (devices marketed prior to May 28, 1976) and support their substantial equivalency claims. The FDA does not perform 510(k) pre-clearance facility inspections and submitters may market the device immediately after 510(k) clearance is granted.

14. Thus, the FDA's finding of a "substantial equivalence" had nothing to do with reviewing the Products' safety and effectiveness, but rather only a determination of equivalence to devices that themselves underwent no safety and effectiveness review.

15. Instead of assuring the safety of the Products though clinical testing, Defendants sought to market the Products without conducting clinical trials by obtaining FDA approval under section 510(k). Defendants received FDA approval under section 510(k) for the Products.

16. On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification ("PHN") that described over 1,000 complaints that had been reported over a three year period related to vaginal sling implants.

17. On July 13, 2011, the FDA issued an update to its prior PHN, warning that complications arising from transvaginal placement of mesh to treat POP are not rare. The PHN

described over 2,800 complaints that had been reported between January 1, 2008 and December 31, 2010 related to vaginal sling implants. Additionally, the FDA specifically noted that there is no evidence that the transvaginal placement of mesh is any more effective in treating POP than traditional, non-mesh techniques.

18. Due to defects in design, manufacture, and warnings, the Products implanted into Plaintiff were unreasonably dangerous at the time they left the Defendants' control.

## CASE SPECIFIC FACTS

19. Plaintiff was implanted with the Products on or about September 12, 2007 and June 3, 2008. The Products were implanted into Plaintiff with the intention of treating her POP.

20. At all times, the Products that were implanted in Plaintiff were used for the purpose that Defendants marketed the product.

21. As a result of the surgical implant of the Products, Plaintiff suffered serious bodily injuries, including extreme pain, bladder spasms, continued urinary incontinence, erosion of her internal bodily tissue, and other injuries similar to the ones described in the FDA's Public Health Advisories of October 20, 2008 and July 13, 2011.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

22. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

23. Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, labeling, sale and/or distribution of the Products, including the duty to assure that the products did not cause users to suffer from unreasonable, dangerous side effects and symptoms.

24. Defendants were negligent in the design, manufacture, testing, advertising, marketing, promotion, labeling, failure to warn, and sale of the Products.

25. Defendants knew or should have known that recipients of the Products, such as Plaintiff, would foreseeably suffer serious injury or death as a result of the Defendants' failure to exercise ordinary care as described above.

26. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY – FAILURE TO WARN

27. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

28. Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Products and, in the course of same, directly advertised or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of the Products.

29. Defendants failed to adequately warn health care professionals and the public, including Plaintiff and her physician, of the true risks of the Products, including, without limitation, extreme pain, bladder spasms, continued urinary incontinence, erosion of internal bodily tissue, and other injuries similar to the ones described in the FDA's Public Health Advisories of October 20, 2008 and July 13, 2011.

30. The Products implanted in Plaintiff were used for their intended purpose, *i.e.*, the correction of POP.

31. Defendants failed to provide timely and reasonable instructions and training concerning safe and effective use of the Products to either Plaintiff or her physician.

32. Plaintiff's physicians, including the surgeon who performed the implant of the Products, could not have discovered any defect with the product through the exercise of care.

33. Plaintiff's physicians, including the surgeon who performed the implant of the Products, did not have substantially the same knowledge that an adequate warning from the manufacturer or a distributor would have communicated.

34. The warnings that were provided by Defendants regarding the Products were not sufficient, accurate, and clear.

35. Defendants had a continuing duty to warn Plaintiff or her doctors of the dangers associated with the Products.

36. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

37. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

38. Defendants are the researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of the Products, which are defective and unreasonably dangerous.

39. The Products are defective in their design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design.

40. If the design defects were known at the time of manufacture, a reasonable person

would have concluded that the utility of the Products did not outweigh their risks.

41. Because of the defects in the Products, they are, and at all times material hereto were, unreasonably dangerous.

42. Defendants are strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce the Products, which were unreasonably dangerous for their reasonably foreseeable uses because of its design defects.

43. Defendants knew or should have known of the danger associated with the use of the Products, as well as the defective nature of the Products, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the Products so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the Products.

44. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

45. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

46. Defendants advertised, labeled, marketed and promoted the Products, representing the quality to health care professionals, the FDA, Plaintiff, and the public in such a way as to induce its purchase or use, thereby making an express warranty that the Products would conform to the representations. More specifically, Defendants represented that the Products were safe and effective for use by individuals such as Plaintiff or that it was safe and effective to treat Plaintiff's condition.

47. The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

48. The Products did not conform to the representations made by Defendants in that the Products were not safe and effective.

49. At all relevant times, Plaintiff used the Products for the purpose and in the manner intended by Defendants.

50. Plaintiff and Plaintiff's physician, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

51. The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries.

52. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

53. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

54. Defendants advertised, labeled, marketed and promoted the Products, representing the quality to health care professionals, the FDA, Plaintiff, and the public in such a way as to induce its purchase or use, thereby making an implied warranty that the Products would conform to the representations. More specifically, Defendants represented that the Products were safe and

effective for use by individuals such as Plaintiff or that it was safe and effective to treat Plaintiff's condition.

55. The Products were not reasonably fit for the ordinary purposes for which such goods are used and did not meet the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manner. Nor were the Products minimally safe for their intended purpose.

56. At all relevant times, Plaintiff used the Products for the purpose and in the manner intended by Defendants.

57. Plaintiff and Plaintiff's physicians, by the use of reasonable care would not have discovered the breached warranty and realized its danger.

58. Defendants' breach of the implied warranty was a substantial factor in bringing about Plaintiff's injuries.

59. As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. Compensatory damages according to proof, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all of Plaintiff's injuries and damages, both past and present;

2. Special damages according to proof, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of Plaintiff's injuries and damages, both past and present, including but not limited to, past and future medical

expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance, and pain and suffering.

3. Double or triple damages as allowed by law;

4. Disgorgement of profits;

5. Attorneys' fees, expenses, and costs of this action;

6. Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

7. Such further relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff demands trial by jury of all claims asserted in this Complaint.

Dated: April 25, 2012

/s/ Charles H. Johnson
Charles H. Johnson
Bar No. 50696
Jonathan R. Mencel
Bar No. 390056
*Attorneys for Plaintiff*
LAW OFFICES OF CHARLES H. JOHNSON, PA
2599 Mississippi Street
New Brighton, MN 55112-5060
Telephone: (651) 633-5685
Fax Phone: (651) 633-4442
bdehkes@charleshjohnsonlaw.com
jmencel@charleshjohnsonlaw.com